Once again, Mr. Wickmore and Mr. O'Connell, Mr. Wickmore, good morning, good morning again. Am I pronouncing it correctly, is it wick?  Wickmer, Wickmer. I think if we were in Germany it would be different, but that's how we say it in St. Louis. I'll write it down phonetically here, so I'll try to get it right next time. Thank you. May it please the court again, my name is Timothy Wickmer and I represent the petitioner to the EU on, Mr. Li is his family name. We respectfully pray that the court vacate the decision denying him asylum and related relief and instead remand the case to the BIA for a proper consideration of the case in light of a credibility finding that follows the applicable statute and case law. Really Your Honor, the only thing at issue in this case is the nature and sufficiency of the credibility determination by the immigration judge and therefore by the BIA to the extent that it's adopted. As a note in this case, just as a personal note, in every political asylum case we're asking the court to protect the life and the liberty of someone who might be a grave danger of their return. And in Mr. Li's case, he already has been returned to China. Of course we tried to stop it, but the department elected to do that. And as a result, if we were to win this case, the department's under some obligation to ensure his safe return. I have not heard from Mr. Li since he's been back. Trying to contact him under these circumstances is somewhat dangerous. So it provides us an added impetus to try to make sure that he has a fair hearing in his case. The standard for credibility is at 8 USC 1229A C4C, and it has to be based on the totality of circumstances and all relevant factors. So in this case, what we have here is a problem with the nature of the inquiry. There were some inconsistencies to be sure, but it's not just any inconsistency that can undermine an asylum case. It has to be an inconsistency that's based upon statute and case law. And in this case, there appeared to have been an impermissible, well, let's just say there was an impermissible religious doctrine knowledge test. Almost like a quiz show on the tenets of the Christian faith that Mr. Li answered some questions incorrectly from Christian doctrine and answered some questions correctly. And though that in and of itself, the immigration judge did note that that by itself would not cause credibility to fail. But it did inform his thinking on other disputed points that created an impermissible bias. And I'm not even alleging that the immigration judge did it intentionally or that he's a bad person or anything like that. But just that he assumed, like this court talked about in Ahmad Shah versus Ashcroft, which is at 396 F3rd 917, and the Seventh Circuit in Huang versus Gonzales at 403 F3rd 945. The Seventh Circuit particularly was concerned that a judge's question of their religious observance tainted the analysis of the credibility throughout. In a sense, it was based entirely on an IJ's personal beliefs of what the religion was or on some perceived common opinion that may not be there. And frankly, it wouldn't really even matter if Mr. Li had a good faith belief that he were a Christian and in some Christian beliefs and identified himself as a Christian and did the things that he testified that he did. Because the Chinese government certainly was willing to persecute him on that basis. Even in light of the fact that there was some lack of knowledge of Christian doctrine, he could recite the entire Our Father. He did know the ceremonies for baptism. He knew the first book of the Bible was Genesis, etc. And so really, what we have here, in a way, it could actually support his credibility. Because you have an underground church in China that is actively persecuted. The country condition- Because he wasn't taught the Bible at his mother's knee, like some of us were. Correct, correct. And because he was part of the underground church and not a government sanctioned church, it doesn't defy belief to think that some of the things handed down may not exactly be correct. But there is no getting around it. There were some discrepancies. Did the board affirm the adverse credibility findings without relying on that lack of knowledge? And if so, what effect does that have? Well, it's the key component in the case, because it's either one of two things. Either the board dispassionately says that was completely improper, but based upon these inconsistencies, we behold the finding. Or the board can say, well, we know that he shouldn't have done that, but let's look at these things. But the board didn't discuss that determination at all. The board didn't discuss what effect the IJ's religious lens, had upon whether or not that analysis was done dispassionately. Matter of SA is 22 INN decision 328, that's a BIA case that lays out that to defer to an IJ's negative credibility finding, there have to be three factors. The discrepancies and omissions actually have to be present in the record. Two, they have to provide, the IJ has to provide specific and cogent reasons to conclude that the testimony is incredible. And three, the alien must fail to provide a convincing explanation for these. So there are numerous examples cited by the government. But it's our position that in none of these examples, or in none of them, can you say that all three things are present. There are some that really aren't in the record, like an allegation of whether he ran meetings versus a pastor leading them, when he had previously testified that he was the organizer. It's capable of an explanation that may not even be a discrepancy. Whether he led newcomers to a government church was juxtaposed against the statement that he himself never went to a government church. There were minor inconsistencies on dates of events that occurred from three to 14 years before. What about the discrepancy as to the government officers?  Yes, and I do think, your honor, that probably the discrepancies involved in the night of that arrest are the most substantive. But I would still maintain that in a highly traumatic event where he was fronting for the people who were there with him, the question of whether he was taken, he testified they were taken. Previously, he said he was the only one arrested. And so his explanation for that was, well, they took us in, but I told them that I was the only one who had anything to do with it, and the others were let go. It's at least capable of a construction that favors him. If that were the only set of circumstances, the police were dressed in utility uniforms versus police uniforms, and the manner of entry. I would submit that that one and only discrepancy or not enough to undercut his credible testimony, plus. Aren't you really, sounds a lot like an argument for de novo review here. We would welcome a de novo review. Substantial evidence. I'm sorry, I misunderstood your question. It is based on substantial evidence and also on due process because we don't know the effect of the religious knowledge test upon its analysis. But this wasn't my case at the first level, and of course, this is the same. We can't go through life blaming everything on lawyering. But it was the same attorney who missed the filing deadline for the appeal, and the BIA subsequently, in light of a motion that we may have allowed the appeal to be heard. So I wish that I had it initially, but however that may be, without a complete analysis by the board of what effect the IJ's litmus test, religious lens had. We don't know if their analysis of the discrepancies are supported by the record, specific, cogent, and reasonable. But no, your honor, I would not argue for a de novo review of a substantial evidence standard. But to the extent that an IJ might have conducted an impermissible religious speculation, that would be constitutional, that would be due process, or at least an issue of law, and that is de novo. So the case can be looked at either as substantial evidence or de novo, and to that extent, of course, that would be de novo. I would like to reserve some time for rebuttal, if you have any questions. You may do so, thank you. Thank you. Mr. O'Connell, good morning again. You may proceed. Good morning again, your honors. In this case, the record does not compel the conclusion that Mr. Lee testified credibly. At the outset, I'd like to note that Mr. Lee was only removed by DHS after his motion for a stay of removal was denied by this court. The inconsistencies identified by the agency in this case are present in the record and provide substantial evidence supporting the agency's decision. I think the most striking inconsistency is the one noted by your honor in which Mr. Lee first claimed during his asylum interview that Chinese police infiltrated his home by pretending to be utility workers trying to collect a water bill. And afterwards, during the removal proceedings, the immigration judge specifically asked Mr. Lee, what were the Chinese police wearing when they entered your home? And he said, they were wearing their police uniforms. And the second inconsistency is whether or not he ever attended a government sanctioned church. During the asylum interview, he said that he did, and then during the removal proceedings, he said that he did not. Two major inconsistencies. Secondly, Mr. Lee, with regard to Mr. Lee's claims that the IJ relied on Mr. Lee's lack of doctrinal knowledge, the board did not need to rely on that. The board didn't necessarily say, that was wrong. The board noted that there were major inconsistencies and didn't feel the need to rely on that lack of doctrinal knowledge. Secondly, there was no litmus test. Did the board tacitly then, in effect, approve of the IJ's consideration of these? I would say that it did neither. I would say that the board noted these two major inconsistencies. Pardon? The board noted these major inconsistencies and then they said we don't need to address the rest of it. It's our lack of doctrinal knowledge. Secondly, there was- As a person of Mr. Lee, does he have to know, I suppose, to ask him a question about his views of eschatology? No, there was no litmus test, as is claimed. He did ask him basically certain bedrock principles. And in light of the fact that Mr. Lee was practicing Christian since 1998, I think is what his testimony was, I think that's right. But he was a practicing Christian for a number of years and he didn't know the basic narrative to Christianity. And in other words, I'll specifically say what he said, he said that he believed Jesus died by poison wine. And the immigration judge noted in his decision that this did not render him incredible standing alone. But he said it was hard to ignore this in light of the other major inconsistencies in his testimony. But again, the board did not rely on that lack of doctrinal knowledge in affirming the immigration judge's decision. Mr. Lee- What is the government's position regarding an IJ, the permissible limits on an IJ's questioning about religious adherence knowledge of the basic principles of the religion that the applicant proposes to know? The board has yet to espouse certain parameters to how much an applicant would need to know or not. But again, that's not at issue in this case because the board didn't address it. And so there's no- Putting it aside, yes. Putting it aside or brushing it aside? Putting it aside because the board didn't address it. Because the board- It's an innocuous way of stating it. Well, the board felt that it didn't need to address his lack of knowledge. The board probably doesn't have time. Well, there's a lot of cases for the board. But again, the IJ did note that it did not render Mr. Lee incredible standing by himself. And especially in light of the fact that this is a real ID case, and you can take into account all relevant factors, including the totality of the circumstances, including whether or not they go to the heart of the asylum claim. The immigration judge just simply noted that his claim was even more implausible in light of the fact that he didn't have knowledge of these basic tenets of Christianity. But again, this case relies on these major discrepancies that were cited by the board. Again, the narrative where he said that the police came in as utility workers, and then he had no information on that during the removal proceedings. This is inconsistent testimony. And again, this is a case where substantial evidence is the standard of review. In this case, the record has to compel the conclusion that Mr. Lee is credible. And when reviewing the evidence, the record does not do that. Unless your honors have any other questions? No, no, thank you. Mr. Wickmer? The all relevant factors, of course, means that the factors have to be relevant. You can't just take any factor. The Chinese government certainly won't ask Mr. Lee about the manner of Christ's death if they decide to persecute him. I wanted to note two things. Number one, the asylum officer's testimony with regard to the police uniforms, it's her testimony. It is hearsay. Now, it is admissible. We don't contend it's not, but that goes to the amount of weight, not to whether it's admissible evidence. And again, viewed in the light of the religious litmus test. The final thing is that there's a case I discovered through shepherdizing for today's case that I plan to file a Rule 28J letter today. In fact, it just was issued by this court last month. It's called Zhang versus Holder, Z-H-A-N-G. I only have the Eighth Circuit case number 12-3164, and the 28J, I will file a Westlaw site. It was decided December 11, 2013. It's not exactly on point, but it is a new statement of the deference required to be given to credibility determinations. And the court stated in that case that the IJ ignored relevant evidence and engaged in impermissible speculation. And like this, that was a forced abortion case, but like this case, there were seven inconsistencies. The board ignored four and focused on three, and they still found the IJ had engaged in speculation. It cites another Eighth Circuit case of Chen versus McKasey, 510 F3rd 797, or it might be 787. It's a 2007 case where the court stated that the deference that they owe to the board is restrained when, in this case, the IJ. The IJ expressed reasons that reflected, quote, an improper bias or an impermissible speculation. And that actually is what we're dealing with here. This is what may be going on, and I think this is why the case is ripe for another hearing, at least to adequately determine credibility. Well, we thank you for your argument. Thank you very much. Maybe again, well, I shouldn't say again, had you been at the original council, but you weren't. And we take the cases as they come to us. We appreciate the arguments on both side. Case is submitted. We'll take it under consideration. That completes our argument calendar for this morning, and we will be in recess until 9 o'clock tomorrow morning.